NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWIN McSWAIN, | |
| Petitioner, | Civil Action No. 11-5658 (JAP) |
| v. | **O P I N I O N** |
| CHARLES WARREN et al., | |
| Respondents. | |

**Pisano,** District Judge:

Petitioner Edwin McSwain ("Petitioner") filed a Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254(a), challenging a judgment of conviction entered by the Superior Court of New Jersey upon Petitioner's guilty plea. See Docket Entry No. 1, at 2. Following this Court's order advising Petitioner of his rights under Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), Respondents were directed to file an answer and duly complied. See Docket Entries Nos. 2 and 12. Petitioner was advised of – but waived – his opportunity to traverse.

For the reasons expressed below, the Court will dismiss the Petition with prejudice and will decline to issue a certificate of appealability. See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

### I. BACKGROUND

Since Petitioner took a guilty plea, the factual predicate underlying his conviction was not extensively detailed during his state proceedings. Mainly, that information came to light when the trial judge was taking his plea. See Docket Entry No. 12-15. The transcript of that plea hearing is directly relevant to Petitioner's challenges here, and it reflects the following exchange:

| | |
|---|---|
| Trial judge: | [Petitioner,] I show you a plea form and ask, is that your signature on the form? |
| Petitioner: | Yes. |
| Trial judge: | Are the answers to the questions on the form your answers? |
| Petitioner: | Yes. |
| Trial judge: | Did you understand all the questions you answered? |
| Petitioner: | Yes. |
| Trial judge: | Did your attorneys also review this form and explain it to you? |
| Petitioner: | Yes. |
| Trial judge: | Do you have, any questions about anything contained on this form or your answers, thereto? |
| Petitioner: | No. |
| Trial judge: | It's indicated on the plea form that you wish to enter a guilty plea to a charge of murder in the first degree. . . . |
| Petitioner: | Yes. |
| Trial judge: | It's also indicated you wish to enter a guilty plea to first-degree armed robbery. . . . |
| Petitioner: | Yes. |
| Trial judge: | It's indicated on the plea form that the State at sentencing is going to seek a sentence of life with 30 years no parole, as part of a plea agreement . . . . Is that your understanding of this plea offer in this case? |
| Petitioner: | Yes. |
| Trial judge: | Has anyone promised you anything other than that to get you to plead guilty? |
| Petitioner: | No. |
| Trial judge: | Now, . . . on July 24th, 2002, you were in Lakewood and in the presence of one John McGee. Is that so? |
| Petitioner: | Yes. |
| . . . | |
| Petitioner's counsel: | [O]n July 24th, 2000, did you go over to the Jefferson Hotel? |
| Petitioner: | Yes. |
| Petitioner's counsel: | Did you go to see Mr. McGee about trying to get your room back there? |
| Petitioner: | Yes. |
| Petitioner's counsel: | He told you you couldn't stay there anymore? |
| Petitioner: | Yes. |
| Petitioner's counsel: | You were armed at the time? |
| Petitioner: | Yes. |
| Petitioner's counsel: | What did you have with you? |
| Petitioner: | A knife. |
| Petitioner's counsel: | When Mr. McGee told you you couldn't stay at the Jefferson anymore, did you stab him? |
| Petitioner: | Yes. |
| Petitioner's counsel: | You stabbed him in the neck? |
| Petitioner: | Yes. |

2

| | |
|---|---|
| Petitioner's counsel: | He fell down then? |
| Petitioner: | Yes. |
| Petitioner's counsel: | And you took his wallet out of his pocket? |
| Petitioner: | Yes. |
| Petitioner's counsel: | There was money in it? |
| Petitioner: | Yes. |
| Petitioner's counsel: | You took the money? |
| Petitioner: | Yes. |
| . . . | |
| Trial judge: | Was your purpose in stabbing him to kill him? |
| Petitioner: | No. |
| Trial judge: | Was your purpose in stabbing him to cause serious bodily injury? |
| Petitioner: | No. |
| Petitioner's counsel: | [W]hen I say you stabbed Mr. McGee, what you did, in fact, was slash his throat; correct? |
| Petitioner: | Yes. |
| Petitioner's counsel: | Now, you knew when you slashed him in the throat you were going to hurt him; correct? |
| Petitioner: | Yes. |
| Petitioner's counsel: | In fact, you knew that it was probable that he was going to die; correct? |
| Petitioner: | Yes. |
| Petitioner's counsel: | Okay. So when you stabbed him or slashed his throat, you knew that was going to kill him; right? |
| Petitioner: | Yes. |
| . . . | |
| Trial judge: | How do you plead to the charge of murder? |
| Petitioner: | Guilty. |
| Trial judge: | How do you plead to the charge of robbery? |
| Petitioner: | Guilty. |
| Trial judge: | I'm satisfied that there is a factual basis for the Court to accept the plea [since] the defendant's freely, voluntarily and knowingly giving up his right to trial by jury, and entering a guilty plea based . . . on the record. |

Id. at 5-9.

Upon taking this plea, Petitioner appealed; his counseled brief asserted that his sentence was excessive in light of his mental, social and emotional impairments. That appeal was denied. See Docket Entry No. 12-6 (opinion dated March 9, 2006). The Supreme Court of New Jersey denied him certification. See Docket Entry No. 12-7 (order dated July 11, 2006).

3

Petitioner then filed an application seeking post-conviction relief ("PCR"). See Docket Entries Nos. 12-8 to 12-10 (reflecting his two counseled and one pro se submissions). There,

> [Petitioner] claimed ineffective assistance of trial and appellate counsel and a variety of generalized errors by the court . . . . [He] claimed trial counsel failed to adequately investigate his innocence and the existence of other possible suspects . . . , and appellate counsel failed to raise all trial errors on appeal. [He] also claimed trial counsel failed to ensure [Petitioner] made a knowing, intelligent and voluntary plea in light of his psychological impairments and the trial court erred in accepting his plea [since Petitioner maintains he] had only repeated the answers trial counsel had prepared for him . . . .

Docket Entry No. 12-13, at 3-4 (Appellate Division's decision dated November 9, 2010).

The trial court held oral arguments, with Petitioner present, and denied him PCR relief.

> The [court found that Petitioner] only made "bald assertions" of ineffective assistance . . . . The [court] pointed out that "by [Petitioner's] own account, trial counsel took steps to investigate any claims of [Petitioner's] innocence, any potential suspects, and any evidence tending to mitigate his exposure to capital punishment." Moreover, [Petitioner] presented no facts to show what trial counsel should have uncovered or presented regarding witnesses or an alibi. Most critically, . . . [Petitioner] failed to show that . . . [he] would have foregone a guilty plea and proceeded to trial. [The court found that] trial counsel investigated [Petitioner's] state of mind by having him examined by two psychologists prior to his entering a guilty plea. . . . [N]either expert opined that [Petitioner's] psychological condition prevented him from entering a knowing and intelligent guilty plea. . . . [T]he record demonstrated [that Petitioner] "did not answer 'yes' to every question, but intelligently responded to each question that was asked." . . . The court additionally found [that Petitioner] offered no evidence to support his claim of lack of understanding of the length . . . of his sentence, noting [Petitioner's] signature on the plea form and his acknowledgment of the specific consequences of his plea at sentencing. In regard to the assertion that appellate counsel should have raised issues other than an excessive sentence, the court stated that an appellate counsel "need not raise every colorable claim suggested by a client. In fact, winnowing out weaker arguments is the hallmark of effective appellate advocacy."

Id. at 3-5; accord Docket Entries Nos. 12-18 and 12-19 (transcripts of PCR arguments).

Petitioner appealed, and the Appellate Division affirmed the trial court's findings. See id. at 7. The Supreme Court of New Jersey denied certification as to his PCR challenges. See Docket Entry No. 12-14. The instant Petition followed, raising four alternative Grounds.

4

In his Ground Two (repeated, as a heading and without any elaboration, by his Ground Three), Petitioner asserted that his "trial counsel failed to ensure that Petitioner's guilty plea was entered knowingly, intelligently, and voluntarily." Docket Entry No. 1, at 8 (capitalization removed). In support of that assertion, Petitioner: (a) noted that the two psychologists retained by his trial counsel found Petitioner's intelligence at the "borderline" level or within the range of "mild mental retardation"; (b) alleged that he merely parroted the answers prepared by his trial counsel; and (c) claimed that his lack of intelligent and voluntary plea should be deduced from the very fact that the bulk of his answers were "yes" or "no." Id.  Petitioner's Ground One maintained that his counsel should have investigated the possibility of Petitioner's alibi by trying to: (a) probe the two persons whom Petitioner suspected of being at odds with the victim; and/or (b) find some alternative suspects. See id. at 5-6.  His remaining Ground Four is limited to a mere statement that his "appellate counsel was ineffective." Id. at 11 (capitalization removed).

## II.  STANDARD OF REVIEW

The general standard of federal habeas review is long-established, and it sets forth a narrowly-tailored test. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) ("As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner").

Thus, Section 2254(a) permits a federal court to entertain only claims alleging that a person is held in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The AEDPA further limits a federal court's authority to grant habeas relief by providing that, when a state court has adjudicated a petitioner's federal claim on the merits, a district court "has no authority to issue the writ of habeas corpus unless the [state court's] decision 'was

5

contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" Parker v. Matthews, 132 S. Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).

Consequently, the starting point of federal habeas review under § 2254(d)(1) is to determine the relevant law clearly established by the Supreme Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). A decision is "contrary to" a Supreme Court holding, within the meaning of 28 U.S.C. § 2254(d)(1), if: (a) the state court outright "contradicts the governing law set forth in [the Supreme Court] cases"; or (b) the state court "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Notably, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Harrington v. Richter, 131 S. Ct. 770, 785 (2011) (quoting Williams, 529 U.S. at 410).

Correspondingly, the standard posed by federal habeas review "difficult to meet, [since it is a] highly deferential standard for evaluating state-court rulings, [and that standard] demands that state-court decisions be given the benefit of the doubt." Cullen, 131 S. Ct. at 1398 (citations and internal quotation marks omitted).

### III.  DISCUSSION

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary [and] intelligent choice among the alternative courses open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970); see also Boykin v. Alabama, 395 U.S. 238, 242 (1969). "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial[,]" including the defendant's privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. Boykin, 395 U.S. at 243.  The voluntariness and intelligence of one's decision to accept a plea is determined by "considering all of the relevant circumstances surrounding it." Brady v. United States, 397 U.S. 742, 749 (1970).  Relevant circumstances include the petitioner's statements during the plea colloquy:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

Paramountly, once a voluntary and intelligent guilty plea has been entered by a criminal defendant, all other non-jurisdictional defects in the proceedings prior to the plea are waived, including all claims of "denial of fair trial," inadequacies in conduct of the presiding tribunal, ineffective assistance of counsel – "except insofar as such inadequacies or ineffectiveness is alleged to have rendered the guilty plea itself "involuntary" and/or "unintelligent." United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000).  As the Supreme Court summarized:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact

>guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

Tollett v. Henderson, 411 U.S. 258, 267 (1973) (referring to McMann v. Richardson, 397 U.S. 759 (1970)).

Thus, when a petitioner challenges the voluntariness and/or intelligence of his/her plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), applies. See Hill v. Lockhart, 474 U.S. 52, 58 (1985); see also Premo v. Moore, 131 S. Ct. 733, 737-38 (2011) (identifying Strickland as the clearly established federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain). To obtain relief under Strickland, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

In a plea situation, the focus of Strickland's performance prong is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill, 474 U.S. at 56-57 (quoting McMann, 397 U.S. at 771). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Representation is

ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. See Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991).[1]

To meet Strickland's prejudice prong in a plea situation, a petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. Rather, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty at all. See Hill, 474 U.S. at 58-59. "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010). "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Richter, 131 S. Ct. at 788. As the Richter Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

---

[1] See also, Strickland, 466 U.S. at 689 ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy"); Thomas v. Varner, 428 F. 3d 491, 499 (3d Cir. 2005) ("To overcome the Strickland presumption that, under the circumstances, a challenged action might be considered sound trial strategy, a habeas petitioner must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy").

9

Id. (citations omitted).²

Here, Petitioner asserts that his counsel provided him with ineffective assistance during the plea proceedings because: (a) the psychologists retained by this counsel found Petitioner's intelligence "borderline" or at the level of "mild retardation"; (b) Petitioner now claims that he merely parroted the answers prepared by his counsel; and (c) his lack of voluntariness and intelligent acceptance of the plea should be deduced from the mere fact that the bulk of his answers were "yes" or "no." See Docket Entry No. 1, at 8.

Petitioner's position is without merit. At the outset, it appears warranted to mention that none of Petitioner's above-listed allegations actually challenge the trial counsel's performance: rather these challenges appear to attack Petitioner's plea itself. However, whether perceived as an attack on the plea or on the counsel's assistance, these challenges fail to merit habeas relief.

The mode of plea questioning is typically such that it invites defendant to respond, mostly, by "yes" and "no" answers rather than by narrative accounts; this occurs regardless of the defendant's level of intelligence. See, e.g., Blackledge v. Allison, 431 U.S. 63, 65 (1977) ("In accord with the procedure for taking guilty pleas . . . , the judge in open court read from a printed form 13 questions, generally concerning the defendant's understanding of the charge, its

---

² In the recent past, the Supreme Court examined the intersection of voluntariness and intelligence of a criminal defendant's plea agreement and the Strickland standard on numerous occasions. See, e.g., Premo, 131 S. Ct. 733 (holding that an inmate was not entitled to habeas relief based on ineffective assistance of counsel since it was not unreasonable to find that counsel did not perform deficiently by failing to move to suppress a confession before advising the inmate to plead guilty or to find no prejudice in light of a second, admissible confession). Hence, Premo underscored the long-established two-prong principle namely, that: (a) what had or might have occurred during the trial has no relevance to the issue of voluntariness and intelligence of a criminal defendant's decision to take or reject a plea; and (b) a viable challenge to one's decision to take a plea must be based on a showing that, absent counsel's errors, the defendant would have not pled guilty at all. See Hill, 474 U.S. at 58-59.

consequences, and the voluntariness of his plea. [The defendant] answered 'yes' or 'no' to each question, and the court clerk transcribed those responses on a copy of the form, which [the defendant] signed. So far as the record shows, there was no questioning beyond this routine"). Moreover, one's "yes" or "no" statement does not become less knowing, voluntary or intelligent if it is repeated throughout a proceeding. See, e.g., McDonald v. Burke, 1998 U.S. App. LEXIS 13160 (6th Cir. June 17, 1998) (examining a plea transcript consisting of systemic "yes" and "no" answers rendered by a defendant having substantial mental limitations); accord Bennerman v. Howes, 2010 U.S. Dist. LEXIS 21436 ( E.D. Mich. Mar. 9, 2010) (same, dismissing a Section 2254 petition within the context of the petitioner's claims that his psychotropic medications rendered him unable to make a knowing, intelligent and voluntary plea).

      Furthermore, Petitioner's two "no" answers initially rendered in response to the trial court's inquiry as to Petitioner's mens rea – when the trial judge utilized the word "purpose" in its legal, technical sense – contradict Petitioner's assertion that he was just parroting the answers prepared for him by the trial counsel. See Docket Entry No. 12-15, at 9-10 ("Was your purpose in stabbing him to kill him?" "No." "Was your purpose in stabbing him to cause serious bodily injury?" "No." "[W]hen I say you stabbed Mr. McGee, what you did, in fact, was slash his throat; correct?" "Yes." "Now, you knew when you slashed him in the throat you were going to hurt him; correct?" "Yes." "In fact, you knew that it was probable that he was going to die; correct?" "Yes." "Okay. So when you stabbed him or slashed his throat, you knew that was going to kill him; right?" "Yes"). Indeed, had Petitioner been parroting the prepared-by-counsel answers, he would have no reason two answer these two "no's" – he would have answered "yes" right away, without obtaining any clarifications as to the nature of the trial judge's questions.

Finally, and paramountly here, Petitioner's chain of "yes" and "no" answers neither establishes nor even suggests that his counsel's advice to take the plea was outside "the range of competence demanded of attorneys in criminal cases," nor does this chain of "yes" and "no" answers demonstrate a reasonable probability that Petitioner would not have pled guilty at all. See Hill, 474 U.S. at 56-59; accord United States v. Hodge, 412 F.3d 479, 490 (3d Cir. 2005) ("[G]iven the nature of our criminal justice system, . . . plea bargains are an 'essential part. 'While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights,' . . . 'the imposition of these difficult choices [is] an inevitable . . . attribute of any legitimate system which tolerates and encourages the negotiation of pleas. [A] defendant plea is not rendered involuntary [if] he enters it to save himself . . . .") (quoting Santobello v. New York, 404 U.S. 257, 261 (1971), and United States v. Marquez, 909 F.2d 738, 742 (2d Cir. 1990), and citing Blackledge v. Allison, 431 U.S. 63, 71 (1977)).

With the same token, the fact of Petitioner having "borderline" intelligence or "mild retardation" does not mean he was prevented from making a constitutionally valid choice to take the plea. See Garner v. Mitchell, 557 F.3d 257 (6th Cir. 2009) (finding a knowing and intelligent waiver on the part of a defendant who was determined by a clinical psychology expert to have "borderline intelligence, functional (i.e., organic) brain impairment, abusive and socially depraved background, and long history of impulsivity"); cf. James v. Cain, 2010 U.S. Dist. LEXIS 119898 (E.D. La. Nov. 9, 2010) (dismissing a habeas petition on the bases of statements made, during state proceedings, by a psychology expert who testified that he examined the defendant and found his intelligence "borderline to mildly mentally retarded," with the overall IQ of 65 and primitive responses under stress); Bennerman, 2010 U.S. Dist. LEXIS 21436, at *13 (citing Shanks v. Wolfenbarger, 387 F.

12

Supp. 2d 740, 749 (E.D. Mich. 2005), for the observation that "a habeas petitioner bears a heavy burden of rebutting the presumption that his or her guilty plea, as evidenced by the plea colloquy, is valid"). The record shows that both psychologists retained by his trial counsel duly evaluated Petitioner and found his level of mental development sufficient to understand and appreciate the plea bargain offered to him and to assess its pros and cons accordingly. Relying on that record, the state courts found Petitioner's level of mental competence sufficient for the purposes of taking the plea. Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." Stevens v. Delaware Correctional Center, 295 F.3d 361, 368 (3d Cir. 2002). Here, Petitioner offers this Court nothing to counter the state courts' factual findings as to sufficiency of his competence; all he offers are his unsupported beliefs that: (a) his mental capacity should have been deemed inadequate; and (b) his trial counsel should have tried to verify his capacity "more."

Petitioner's challenges fail to meet either prong of the Strickland test, since his trial counsel's actions were reasonable, and Petitioner failed to show any prejudice. See Hill, 474 U.S. at 56-59. Petitioner provides this Court with no basis for finding that Petitioner's plea proceedings could have been different had the trial counsel tried "more," e.g., if Petitioner was examined by one more psychology expert or had Petitioner been question more extensively by his trial judge or his counsel about Petitioner's decision to take the plea. Thus, the state courts' denial of Petitioner's challenges was not an unreasonable application of Supreme Court precedent.

The aforesaid finding, in and by itself, concludes the Court's review. See Tollett, 411 U.S. at 26. However, taking notice of Petitioner's Grounds One and Four, the Court notes, in passing, that these remaining Grounds also fail to merit habeas relief.

> Petitioner's next argument is that [his defense counsel's] performance was deficient because [the defense counsel] failed to locate and present [certain testimonial evidence.] Petitioner speculates that [such testimonial evidence] might have [created an alibi for him,] and he deduces from that speculation that [his defense counsel']s failure to locate [such evidence] and investigate [it] was an act of ineffective assistance within the meaning of the Strickland standard. In . . . Rolan v. Vaughn, 445 F.3d 671 (3d Cir. 2006). . . . [the Court of Appeals] underscores two key principles governing this type of inquiry: (a) counsel is not obligated to chase after the wind (e.g., by striving to locate [long-shot evidence]) in hopes of stumbling upon a [piece of evidence that] might turn out favorable; and (b) habeas relief may be warranted only upon the petitioner's showing that [such evidence was actually in existence and] so favorable to the petitioner that lack thereof resulted in prejudice to the petitioner's case within the meaning of the second prong of Strickland. See Strickland, 466 U.S. at 690-91; see also Kimmelman v. Morrison, 477 U.S. 365, 384 (1986); accord Lewis v. Mazurkiewicz, 915 F.2d 106 (3d Cir. 1990) (expressly adopting Strickland and Kimmelman rationale for the purposes of failure-to-investigate analysis).

Echols v. Ricci, 2011 U.S. Dist. LEXIS 93833, at *98-102 (D.N.J. Aug. 19, 2011), aff'd, 2012 U.S. App. LEXIS 14803 (3d Cir. July 19, 2012) (quoting Strickland, 466 U.S. at 691, for the observation that "counsel has a duty to make [only] reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary").

In light of this standard, the state courts' dismissal of Petitioner's Ground One (asserting that his trial counsel should have investigated two persons whom Petitioner suspected of being at odds with his victim, or that his trial counsel should have chased after some unspecified leads in hope to find witnesses that could have offered alternative murder suspects) was not an unreasonable application of Supreme Court precedent.

14

Finally, the state courts' dismissal of Petitioner's Ground Four (challenging assistance of his appellate counsel on the basis of that counsel's selection of only one claim that appeared potentially viable) was in full accord with Smith v. Robbins, 528 U.S. 259, 285 (2000) (appellate counsel need not raise every non-frivolous issue on appeal; he "may select from among them in order to maximize the likelihood of success on appeal"), and Jones v. Barnes, 463 U.S. 745, 750 (1983) (rejecting "per se rule that appellate counsel must raise every nonfrivolous issue").

Since state courts' findings were not an unreasonable application of Supreme Court precedent with regard to Petitioner's Ground One, Ground Two (Ground Three, which simply recited Ground Two) and Ground Four, all these Grounds warrant no habeas relief.

Therefore, his Petition will be dismissed..

## IV.  CERTIFICATE OF APPEALABILITY

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## V.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).


/s/ Joel A. Pisano
**JOEL A. PISANO,**
**United States District Judge**

Dated: February 7, 2013